IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HAROLD ALLBRITTON,

    Petitioner,               No. CIV S-04-0370 WBS JFM P

    vs.

CLAUDE E. FINN, Warden,

    Respondent.             FINDINGS AND RECOMMENDATIONS

                                      /

        Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1982 conviction on charges of second degree murder and arson causing great bodily injury, and the sentence of fifteen years to life in prison imposed thereon.  Petitioner contends that the terms of his plea bargain have been breached.

        Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

The claims contained in the instant petition were summarily denied by the California Superior and Supreme Courts. See Resp. Exh. 7[1], 8,[2] 11.[3] Because this court is "presented with a state court decision that is unaccompanied by any ratio decidendi" on this issue, an independent review of the record is required "to determine whether the state court

---

[1] In re the Application of Harold Allbritton, Case No. FCR205297, citing In re Clark, 5 Cal.4th 750, 767 (1993). (Resp.'s Ex. 7.)

[2] In re the Application of Harold Allbritton, Case No. FCR205301, citing In re Clark, 5 Cal.4th 750, 767 (1993). (Resp.'s Ex. 8.)

[3] In re Harold Allbritton, S115741, denied January 22, 2004, citing In re Robbins, 18 Cal.4th 770, 780 (1998). (Resp.'s Ex. 11.)

clearly erred in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); accord Wilcox v. McGee, 241 F.3d 1242, 1245 (9th Cir. 2001).

      Petitioner contends that Solano County officials, including representatives of the Solano County District Attorney's office and the Vallejo Police Department, violated his plea agreement by opposing his parole before a Board of Prison Terms panel, and further argues that the Solano County Court is not enforcing the plea agreement, resulting in a two-year denial in a parole hearing decision rendered on June 13, 2002. (Pet. at 5, 5a, Exhs. A & B.)[4] Petitioner maintains that under the plea agreement, in order to parole at half time---seven and one half years---petitioner was obligated to work and to demonstrate good behavior. (Pet. at 5.) Petitioner has now served almost 25 years in prison, has remained disciplinary free for the entire time of his incarceration and receives positive prison work reports. (Pet., at 5, Exh. B.) In a separate decision the panel found that petitioner as a murder convict could not reasonably expect to parole during the next two years. (Pet., Exh. B.) Petitioner avers that his separate challenge to the parole board decision is still pending exhaustion in the state supreme court. (Pet., at 4.) In essence, petitioner contends that the terms of his plea bargain have been breached.

## THE RECORD

      Petitioner has not provided a copy of a written plea agreement and review of the record does not indicate a written plea agreement was prepared. The plea hearing transcript reflects petitioner withdrew his not guilty pleas to counts I - III and agreed to enter pleas of guilty to Count I, which would be reduced to second degree murder, and to Count II, arson with great bodily injury, and the prosecution would dismiss Count III, arson of an inhabited structure or property. (Resp.'s Ex. 1, lodged March 28, 2005, at 5.) It was agreed that the sentencing for
/////

---

[4] Petitioner is not challenging the denial of parole by the Board of Prison Terms. Petitioner avers that his separate challenge to the parole board decision was still pending exhaustion in the state supreme court at the time petitioner filed the instant petition. (Pet. at 4.)

Counts I and II would run consecutively.  (Id.)[5]  Defense counsel informed the court he would cover what the sentencing agreement meant once he got through the voir dire of petitioner.  (Id.)

Defense counsel then confirmed with petitioner that he and defense counsel had discussed the negotiations and the entry of the plea; petitioner agreed.  (Id., at 5-6.)  Petitioner confirmed that he fully understood the intent and the import of the negotiations and what was transpiring at the plea hearing.  (Id. at 6.)  Petitioner denied needing any additional time to consider the plea offer.  (Id. at 6.)  Defense counsel reviewed the constitutional and statutory rights petitioner was waiving with regard to the preliminary hearing by accepting the plea offer and entering a guilty plea; petitioner waived his right to a preliminary hearing.  (Id. at 6-8.)  Defense counsel continued:

> DEFENSE COUNSEL:  Now, other than what has been discussed here in court today, that is, that the entry of a plea of guilty to Count I would be a plea of guilty to murder in the second degree and that the court would accept a plea and the district attorney would accept a plea of guilty to a Violation of Section 450(a) of the Penal Code, commonly called arson, and dismiss the remaining Count III, have any other promises been made to you or to anyone close to you to induce you or convince you to enter these pleas?
>
> PETITIONER:  No.
>
> DEFENSE COUNSEL:  Has anybody threatened you personally or a member of your family or close friend to cause you to enter this plea?
>
> PETITIONER:  No.
>
> DEFENSE COUNSEL:  Do you understand that pursuant to your plea the Court could impose as a sentence for the Violation of Section 187 of the Penal Code in the second degree, a term of 15 years to life?
>
> PETITIONER:  Yes.
>
> DEFENSE COUNSEL:  Do you understand also that the Court under the term of this plea would sentence you consecutively for the Violation of Section 451(a) of the Penal Code which would be

---

[5] On March 20, 1994, petitioner's sentence was modified for count 2 to run consecutively with count 1.  (Pet., Exh. C.)

|   |   |
|---|---|
| 1 | one-third of the middle term now provided for by law for that crime which would be two years 4 months.  Do you understand that? |
| 2 | |
| 3 | PETITIONER: Yes. |
| 4 | DEFENSE COUNSEL: Do you understand that the total sentence specified would then be 17 years 4 months to life? |
| 5 | |
| | PETITIONER: Yes. |
| 6 | |
| 7 | DEFENSE COUNSEL: And you understand also that with good time and so forth that can be reduced at this time to one third of that specified time. |
| 8 | |
| | PETITIONER: Yes. |
| 9 | |
| 10 | DEFENSE COUNSEL: Okay.  Do you understand that there have been rumors or discussions that the legislature was going to pass a law to reduce that one-third to one-half, but we don't know whether or not that will affect your case. |
| 11 | |
| 12 | PETITIONER: Yes. |

(Id., at 9-10.) Defense counsel went on to confirm that petitioner is a United States Citizen, was not under the influence of any drug, narcotic or alcohol that would render him unable to understand the nature or consequences of his pleas. (Id. at 10.) Petitioner again confirmed he had had sufficient time to discuss the case with defense counsel and that entry of the plea was in his best interest. (Id. at 11.) Defense counsel reviewed the constitutional rights petitioner would waive by entering his guilty plea; petitioner confirmed he understood those rights and waived them. (Id. at 11-14.)

The parties stipulated to the factual basis supporting petitioner's plea on the basis of the police reports "and on the basis of the West Doctrine in that Mr. Allbritton would be entering this plea to avoid the more serious consequences of conviction of a higher degree of murder and the possibility of special circumstances." (Id. at 14.) Petitioner confirmed he understood and waived his rights to a speedy and public trial. (Id. at 15.)

At this time, the court inquired about the potential sentence:

/////

1  THE COURT:  All right.  The only question I had, when discussing the length of possible sentence, you indicated that there is a possibility under the present law that the term could be as low as, and you mentioned one-third; one-third would be reduced by one-third?

4  DEFENSE COUNSEL:  He would be on the first sentence eligible for parole at one-third of 15 years.

5  THE COURT:  One-third of 15?

6  DEFENSE COUNSEL:  Right, which would be 10 years.

He would then be eligible for parole on the second offense at the conclusion of one-third of two years four months.

9  PROSECUTION:  Actually I think it's the other way around.  He gave the right numbers but subtracting the other way.  It's one-third off for good behavior.

10 DEFENSE COUNSEL:  Correct.

11 PROSECUTION:  It's how they compute it.  I assume with the 17 years, 4 months sentence it's going to be somewhere between eleven and a half (11-1/2) and twelve (12) years.

13 THE COURT:  At which minimum time would have to be served under the present law.

15 PROSECUTION:  Yes.

16 DEFENSE COUNSEL:  You understand that, Mr. Allbritton?

17 PETITIONER:  Yes.

18 DEFENSE COUNSEL:  And that is generally as I explained it to you before coming into court today, is it not?

19 PETITIONER:  Yes.

21 (Id. at 15.) The court inquired whether petitioner was satisfied that he had sufficient time to

22 discuss this matter with defense counsel; petitioner responded he had. (Id. at 15-16.) When

23 asked if he was satisfied that entering the pleas was in his best interest, petitioner responded,

24 "Yes." (Id. at 17.) Defense counsel stated:

25  I concur in the entry of pleas and that there, as far as I'm concerned, has been an adequate opportunity to investigate and
26  discuss the facts and the legal issues and defenses that may be

6

1    available in this matter. . . . And I would concur in the entry of the
2    pleas.

3  (Id. at 17.) The court took petitioner's plea and found that the plea was entered freely and
4  voluntarily. (Id. at 17-18.)

5       During the January 7, 1983 sentencing hearing, the following took place:

6       THE COURT: I wasn't sure there was an allegation of proof of
        GBI; so just for my own records, because of the great violence
7       involved in this, I am going to deny probation. I will, pursuant to
        the report and to the bargain made in this matter, sentence the
8       [petitioner] on Count I, murder in the second degree, to the
        California Department of Corrections for a period of 15 years to
9       life.

10      In addition to that, on Count II, Violation of Section 451(a), I'll
        sentence him to consecutive sentence, which would be one-third of
11      the mid term or two years and four months.

12      In addition to that period of time, upon your release, Mr. Albritton,
        you would be subject to parole for a period of up to three years.
13
        And credits --
14
        DEFENSE COUNSEL: There would be substantial –
15
        PROSECUTION: 219 days, I believe, is the total.
16
        THE COURT: Continued through today, for a total of 146 days.
17      Against that, he would receive 73 days of good time work time
        credit, a total of 219 days.
18

19  (Resp.'s Ex. 2, lodged March 28, 2005, at 4-5.)

20       "Plea agreements are contractual in nature and are measured by contract law
21  standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir.2003) (quoting United States v. De la
22  Fuente, 8 F.3d 1333, 1337 (9th Cir.1993)). Although a criminal defendant has a due process
23  right to enforce the terms of a plea agreement, see Santobello v. New York, 404 U.S. 257,
24  261-62, 92 S.Ct. 495 (1971), there is no evidence that petitioner's subjective expectations about
25  how parole would be decided were part of the plea agreement. Petitioner has not pointed to any
26  language in any plea agreement that shows that any particular term in his plea agreement has

7

1 been breached.  Petitioner claims that the district attorney and others told petitioner he would
2 parole at 7-1/2 years if he worked and behaved.  (Pet. at 5b, 1.)  However, petitioner has
3 presented no document or record citation to support that statement.

4       There is no language in the plea hearing that states petitioner would be paroled so
5 long as he worked and behaved himself in prison.  There is no basis in the record to support a
6 reasonable inference that his plea agreement carried a guarantee of release after 7-1/2 years.
7 Although there is a discussion on the record concerning good time credits, there is no promise
8 made to petitioner that he would parole in 7-1/2 years.  In Brown v. Poole, the prosecutor
9 actually stated:

> Now, if you behave yourself at the state prison, as most people do,
> and I am inclined to believe that you will, you are going to get out
> in half the time. You get half of that 15 years off, or half of that 17
> years off with the imposition of the extra two years, for good
> time/work-time credits. That's up to you.

13 Id., 337 F.3d at 1157-58.  Here, the prosecution did not make a promise on the record as to the
14 length of time petitioner must serve or indicate that if petitioner behaved himself in prison he
15 would get out in half the time.

16       In addition, there is no language in the plea hearing that forbids Solano County
17 officials, including representatives of the Solano County District Attorney's office and the
18 Vallejo Police Department, from appearing at parole hearings and/or arguing against petitioner's
19 release on parole.

20       At the plea hearing, defense counsel noted petitioner would become eligible for
21 parole. (Resp.'s Ex. 1, at 15.)  To the extent petitioner believed eligibility meant actual release
22 on parole, he has not shown that such a term existed in his plea agreement.  Eligibility does not
23 mean suitability, and under state law (as it existed when he was sentenced and as it exists now),
24 the inmate must be found suitable before his term and release date are set.  Petitioner's sentence
25 upon his conviction based on a plea agreement was 15 years to life and not a straight term of
26 years sentence.  Petitioner has received the parole considerations to which he was entitled under

1  that agreement and sentence.  Accordingly, petitioner's claim that his plea agreement was
2  breached in violation of his right to due process fails.
3         For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's
4  application for a writ of habeas corpus be denied.
5         These findings and recommendations are submitted to the United States District
6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
7  days after being served with these findings and recommendations, any party may file written
8  objections with the court and serve a copy on all parties.  Such a document should be captioned
9  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
10 failure to file objections within the specified time may waive the right to appeal the District
11 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
12 DATED: January 17, 2008.

                                         UNITED STATES MAGISTRATE JUDGE

16 001; allb0370.157